THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LANA R. STAHELI PH.D., et al.,

Plaintiffs,

v.

CHICAGO INSURANCE COMPANY, et al.,

Defendants.

CASE NO. C16-0096 JCC

ORDER DISMISSING CASE AND MOOTING MOTIONS TO COMPEL AND STAY

This matter comes before the Court on Defendants' joint motion to dismiss (Dkt. Nos. 19 and 20), Plaintiffs' motion to compel (Dkt. No. 29), and Defendant ACE American Insurance Company's motion to stay discovery (Dkt. No. 31). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS Defendants' joint motion to dismiss (Dkt. Nos. 19 and 20), thereby MOOTING Plaintiffs' motion to compel (Dkt. No. 29) and ACE's motion to stay (Dkt. No. 31).

I.      BACKGROUND

A.      The Insurance Policies

Plaintiff Lana Staheli purchased insurance policies from Defendants Chicago Insurance Company and ACE American Insurance Company "to provide professional liability coverage for her therapy practice." (Dkt. No. 1 at 2.) Both policies contained roughly identical language

1  explaining that the insurers would pay "all sums which the Insured shall become legally

2  obligated to pay as Damages…in the practice of psychology by the [Named] Insured." (Dkt. No.

3  20 at 7; Dkt. No. 22-1 at 5.) Both policies explained that the insurers had a "duty to defend any

4  Suit against the Insured seeking Damages." (Dkt. No. 20 at 7; Dkt. No. 22-1 at 5.) Both policies

5  also explained that "[t]he **Company**, at its option, shall select and assign defense counsel; however,

6  the **Named Insured** may engage additional counsel, solely at their expense, to associate in their

7  defense of any claim covered hereunder." (Dkt. No. 20 at 7; Dkt. No. 22-1 at 6.)

8      Finally, both policies identified the "Named Insured" as Mrs. Staheli in her capacity as sole

9  proprietor of her psychology business. (Dkt. No. 20 at 6; Dkt. No. 22-1 at 3.)

10      **B.     The *Elliot* Action**

11      In November 2013, a lawsuit was filed against Mrs. Staheli, her husband Lynn Staheli,

12  and their marital community. (Dkt. No. 1 at 3.) The plaintiffs in that lawsuit, which the Court

13  will refer to as the "*Elliot* action," made a number of claims related to Mrs. Staheli's therapeutic

14  treatment of plaintiff Susan Elliott. (*Id.*) The only allegation against Mr. Staheli was that he was

15  married to Mrs. Staheli. (*Id.*)

16      Mrs. Staheli tendered the *Elliot* action to CIC and ACE in November 2013. (*Id.*) In

17  January 2014, CIC assigned Mrs. Staheli's defense to Heather Jensen of Lewis Brisbois. (*Id.*)

18  ACE agreed to pay for half of Jensen's fees. (*Id.*) On January 22, 2014, the Stahelis' separate

19  counsel, June Campbell, emailed CIC and ACE and requested that they explain their rationale for

20  not defending Mr. Staheli as well. (*Id.* at 4.) On April 7, 2014, CIC notified the Stahelis that it

21  would not cover Mr. Staheli's legal defense because he was not insured under CIC's policy. (*Id.*)

22  ACE did not respond to Campbell's email until March 27, 2015, when it notified the Stahelis that

23  it too would not cover Mr. Staheli's defense. (*Id.* at 5.) On February 9, 2015, CIC confirmed that

24  it would not cover Mr. Staheli's defense or the defense of the marital community. (*Id.* at 6.)

25  Throughout this time, the Stahelis continued to retain their personal attorneys on behalf of Mr.

26  Staheli and the marital community. (*Id.* at 4, 8.) In August 2015, CIC and ACE agreed to allow

1  Jensen to represent the interests of the entire marital community at trial. (*Id.* at 6.)

2  The *Elliot* action settled for $450,000 after three days of trial. (*Id.* at 6.) Plaintiffs do not

3  dispute Defendants' assertion that CIC and ACE covered the settlement in full.

4  Plaintiffs in this matter are Mr. and Mrs. Staheli and their marital community. They

5  allege that Defendants breached their insurance contracts, breached their duty to defend, acted in

6  bad faith, violated the Insurance Fair Conduct Act, and violated the Consumer Protection Act.

7  (*Id.* at 6–8.) They move for damages of, among other things, no less than $200,000 in attorney

8  fees that Plaintiffs incurred in defense of the *Elliot* action. (*Id.* at 8.)

9  **II.   DISCUSSION**

10  **A.     Rule 12(b)(6) Standard**

11  "To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual

12  allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its

13  face.'" *Weber v. Dep't of Veterans Affairs*, 512 F.3d 1178, 1181 (9th Cir. 2008) (quoting *Bell*

14  *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)). "A claim has facial plausibility when the

15  plaintiff pleads factual content that allows the court to draw the reasonable inference that the

16  defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

17  However, "[a] pleading that offers labels and conclusions or a formulaic recitation of the

18  elements of a cause of action will not do."*Id.* (internal quotation marks omitted). "Nor does a

19  complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.*

20  (internal quotation marks omitted). "Dismissal can be based on the lack of a cognizable legal

21  theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v.*

22  *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)

23  In a motion to dismiss under Rule 12(b)(6), "[a]ll allegations of material fact are taken as

24  true and construed in the light most favorable to the nonmoving party." *Sprewell v. Golden State*

25  *Warriors*, 266 F.3d 979, 988 (9th Cir.). "As a general rule, a district court may not consider any

26  material beyond the pleadings in ruling on a Rule 12(b)(6) motion," with two exceptions. *Lee v.*

1   *City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted). First,

2   a court may consider documents "which [are] properly submitted as part of the complaint," as

3   well as those whose "authenticity… is not contested" and on which the complaint "necessarily

4   relies." *Id.* "Second, under Fed. R. Evid. 201, a court may take judicial notice of matters of

5   public record." *Id.* at 688–89 (internal quotation marks omitted).

6   **B.    Plaintiffs' Claims Regarding Mr. Staheli and the Marital Community**

7        In Part B, the Court will analyze the sufficiency of Plaintiffs' claims as made by Mr.

8   Staheli and the marital community. In Part C, the Court will address Mrs. Staheli's claims.

9   **1.    Breach of Contract**

10       In order for a plaintiff to prevail on a breach of contract claim, contractual privity must

11  exist between the plaintiff and defendant. *Klickman v. Title Guar. Co. of Lewis Cty.*, 105 Wash.

12  2d 526, 529 (1986) (dismissing breach of contract claim because "[n]o privity of contract exists

13  between appellant and respondent"). Here, both Defendants' policies explicitly insured Mrs.

14  Staheli as sole proprietor of her psychology practice. They did not also insure Mr. Staheli or the

15  marital community. Thus, there was no privity between these parties and Defendants. *See id.*

16  ("The only contractual obligations respondent has assumed are those expressed in the policy of

17  title insurance."); *Mathioudakis v. Fleming*, 140 Wash. App. 247, 254 (2007) ("[T]here was no

18  contract between Mathioudakis and Fleming and, thus, no privity between Fleming and either

19  Mathioudakis or Mathioudakis's UIM insurer.").

20       Plaintiffs point out that Washington is a community property state, and that Defendants'

21  policies required them to "pay on behalf of the Insured all sums which the Insured shall became

22  legally obligated to pay." Therefore, according to Plaintiffs, Defendants' policies must have

23  covered Mr. Staheli and the marital community as well, because they could have been liable for

24  Mrs. Staheli's activities under Washington community property law.

25       Plaintiffs get ahead of themselves. Defendants' policies specifically required ACE and

26  CIC to pay only sums that the "Insured" is obligated to pay—and only Mrs. Staheli is listed as

the "Insured." Therefore it is irrelevant whether the marital community or Mr. Staheli might ultimately have to pay these sums—all that matters is whether Mrs. Staheli—the "Insured"—would have to pay them.

Plaintiffs also argue in their response brief that Mr. Staheli and the marital community are third-party beneficiaries of the policy. Under Washington law, "[t]he creation of a third-party beneficiary contract requires that the parties intend that the promisor assume a direct obligation to the intended beneficiary at the time they enter into the contract." *Postlewait Const., Inc. v. Great Am. Ins. Companies*, 106 Wash. 2d 96, 99 (1986). "Thus, both contracting parties must intend that a third party beneficiary contract be created." *Id.* Intent is tested objectively: only if performance of the contract would "necessarily and directly" benefit the third party is intent found. *Id.* "An incidental beneficiary acquires no right to recover damages for nonperformance of the contract." *Del Guzzi Const. Co. v. Glob. Nw., Ltd., Inc.*, 105 Wash. 2d 878, 887 (1986).

Here, Defendants' policies were objectively intended to directly benefit Mrs. Staheli because they required Defendants to defend Mrs. Staheli and cover damages related to her psychology practice. In comparison, the policies did not require Defendants to defend Mr. Staheli and the marital community or to cover their damages. Therefore, even though Mr. Staheli and the marital community might ultimately be liable for Mrs. Staheli's damages, there is no indication that the policies would "necessarily and directly" benefit them as well. Rather, their benefit would be entirely indirect: any damages covered by the policies would not then be the responsibility of Mr. Staheli and the marital community.

Thus, Mr. Staheli and the marital community are neither in privity of contract with Defendants nor are they third-party beneficiaries of Defendants' insurance policies. They therefore cannot prevail on their breach of contract claims.

### 2.    Duty to Defend

In order to prevail on a duty to defend claim under an insurance contract, a plaintiff must be insured under that contract. *See Hartford Fire Ins. Co. v. Leahy*, 774 F. Supp. 2d 1104, 1112

(W.D. Wash. 2011) (finding "no other reported Washington case outside the automobile insurance context holding that one who is not an insured under the policy is entitled to a defense"); *Scottish & York Int'l Ins. Grp. v. Ensign Ins. Co.*, 42 Wash. App. 158, 161 (1985) (finding no duty to defend where party was "not a 'person insured' as defined in the body of [insurer's] policy"). Because Defendants' policies did not insure Mr. Staheli or the Staheli marital community, neither can prevail on their duty to defend claim.

Plaintiffs argue that Defendants had a duty to defend Mr. Staheli and the marital community because Mrs. Staheli's insurance policies could "conceivably" have covered them. But the cases they cite do not support this argument. Plaintiffs' primary authority, *Woo v. Fireman's Fund Ins. Co.*, provides that an insurer has a duty to defend "when a *complaint* against the *insured*, construed liberally, alleges facts which could, if proven, impose liability upon the *insured* within the policy's coverage." 161 Wash. 2d 43, 52–53 (2007) (emphasis added). Similarly, the court in *Am. Best Food, Inc. v. Alea London, Ltd.*, which Plaintiffs also cite, held that "[a]n insurer may not put its own interests ahead of its *insured's*," and therefore "must defend until it is clear that the claim is not covered." 168 Wash. 2d 398, 405 (2010) (emphasis added).

In other words, these cases hold that when a complaint could conceivably be construed to allege claims against the *insured* that are covered by the policy, the insurer has a duty to defend. They do not hold that an insurer has a duty to defend any *party* who could conceivably have been covered by its *insurance policy*.

Mr. Staheli and the marital community thus cannot prevail on their duty to defend claim.

### 3. Bad Faith

"Under Washington law, a bad faith claim may only be brought by an insured under the policy." *Hartford Fire Ins. Co.*, 774 F. Supp. 2d at 1120. Mr. Staheli and the marital community therefore have no legal basis for their bad faith claims.

//

4.      **Insurer Fair Conduct Act and Consumer Protection Act**

Finally, Plaintiffs not covered by an insurance policy cannot bring a claim for alleged violations of the IFCA or CPA under that policy. *Id.* at 1122. Therefore, Mr. Staheli and the marital community have no legal basis for their IFCA or CPA claims.

C.      **Mrs. Staheli's Claims**

The Court will now analyze the sufficiency of Mrs. Staheli's claims.

1.      **Breach of Contract and Duty to Defend**

There is no dispute that Defendants paid for a lawyer to defend Mrs. Staheli in the *Elliot* action and paid for the settlement. Therefore, Mrs. Staheli cannot prevail on any claim that Defendants breached their contract with her or their duty to defend her.

2.      **Insurer Fair Conduct Act, Consumer Protection Act, and Bad Faith**

Absent unreasonable insurer conduct, there is no cause of action under the IFCA or CPA. *Seaway Properties, LLC v. Fireman's Fund Ins. Co.*, 16 F. Supp. 3d 1240, 1254 (W.D. Wash. 2014); *Am. Mfrs. Mut. Ins. Co. v. Osborn*, 104 Wn. App. 686, 699 (2001). Similarly, "[a]n insurer acts in bad faith if its breach of the duty to defend was unreasonable, frivolous, or unfounded." *Am. Best Food, Inc.*, 168 Wash. 2d at 412. Because Defendants defended Mrs. Staheli, fully covered her settlement, and had no duty to do the same for her husband or marital community, they did not behave unreasonably or act in bad faith in this regard.

Mrs. Staheli alleges, however, that Defendants violated the IFCA, CPA, and acted in bad faith by failing to respond in a timely manner to Mrs. Staheli's questions about whether they would also defend her husband. But this allegation cannot support Mrs. Staheli's IFCA claim, because under the IFCA "[t]he right to sue arises solely from an unreasonable denial of a claim for coverage or payment of benefits." *Seaway Properties*, 16 F. Supp. 3d at 1255. Mrs. Staheli does not and cannot allege that she was denied coverage.

Mrs. Staheli's timeliness allegation also fails to support her CPA and bad faith claims. "Harm is an essential element of both a bad faith and a CPA claim," and there is no evidence that

1   Defendants caused Mrs. Staheli any harm. *Werlinger v. Clarendon Nat. Ins. Co.*, 129 Wash.

2   App. 804, 810 (2005).  Mrs. Staheli argues that she was harmed because Defendants' late

3   response caused her to pay attorney fees for the defense of her husband and marital community.

4   But Defendants had no duty to defend Mr. Staheli and the marital community or to pay for their

5   defense. And when Defendants ultimately did respond to Mrs. Staheli, they told her that they

6   would not be defending her husband or marital community, which is still their position today.

7   Therefore, even if Defendants' response had been immediate, the result would have been the

8   same—her husband and marital community would have been responsible for their own attorney

9   fees.

10  **III.    CONCLUSION**

11         For the foregoing reasons, Defendants' joint motion to dismiss (Dkt. Nos. 19 and 20) is

12  GRANTED. Plaintiffs' motion to compel (Dkt. No. 29) and ACE's motion to stay discovery

13  (Dkt. No. 31) are MOOT. This case is DISMISSED with prejudice.

14         DATED this 19th day of May 2016.

15

16

17

18

19

20  _____

21  John C. Coughenour
    UNITED STATES DISTRICT JUDGE

22

23

24

25

26

ORDER DISMISSING CASE AND MOOTING
MOTIONS TO COMPEL AND STAY
PAGE - 8